**Opinion issued May 30, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00582-CV

———————————

**NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, LLC AND NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY, LTD., Appellants**

**V.**

**ANGELINE NORVIL, Appellee**

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-06608**

## O P I N I O N

North Cypress Medical Center Operating Company GP, LLC and North

Cypress Medical Center Operating Company, Ltd. (collectively, North Cypress) are

appealing the denial of their motion to dismiss Angeline Norvil's petition for

declaratory judgment. In a single issue, North Cypress argues that the trial court erred by denying its motion to dismiss because the Texas Citizens Participation Act (TCPA) applies to Norvil's claim, there are no applicable statutory exemptions, Norvil did not meet her burden to establish a prima facie case for her claim, and North Cypress established affirmative defenses to Norvil's claim for declaratory relief. We affirm the trial court's order denying the motion to dismiss.

## Background

On June 20, 2014, Norvil was injured in a slip-and-fall at a Kroger grocery store. She was transported by ambulance to North Cypress's emergency room, where she was treated for her injuries.

Norvil did not have health insurance. At the time North Cypress treated Norvil, she signed a contract which provides: "In consideration of the services to be rendered to the patient, I individually promise to pay the patient's account at the rates stated in North Cypress' price list . . . which rates are expressly incorporated by the reference as the price term of this agreement to pay the patient's account." Norvil also agreed to assign her right to payment of any proceeds, including settlement funds received from a third-party, to North Cypress (the assignment).

On July 7, 2014, North Cypress filed a hospital lien pursuant to Chapter 55 of the Texas Property Code to give notice that it was asserting a lien on all causes of action or claims pursued by Norvil for damages arising from her accident. One week

later, North Cypress's counsel sent Norvil notice of the filing of the hospital lien and a demand for payment of $5,028.50, full amount of "unpaid charges for medical goods and services," as set forth in the hospital bill. On March 14, 2017, Norvil informed North Cypress that she was in the process of settling her claim with Kroger's insurance company and she proposed reducing the amount of the hospital bill by 50% which would result in a total amount owed of $2,514.25. Norvil explained that she needed to determine the amount of the reduction to "be able to determine the amount for a proper settlement." North Cypress requested additional information before it could agree to a reduction. On April 4, 2017, Norvil provided a breakdown of proposed payments to various parties based on the current settlement offer of $33,500. Norvil asserted that it was necessary for North Cypress to reduce the amount of the bill because North Cypress had charged her over $3,000 for an MRI even though "the average amount negotiated with most major health insurers" in Texas for an MRI is $400.

North Cypress responded by sending a second letter to Norvil on April 14, 2017, rejecting the proposed reduction, and demanding payment of the full amount of the bill. North Cypress also requested additional documents and information relating to Norvil's settlement discussions with Kroger. On September 20, 2017, North Cypress sent a third letter to Norvil demanding additional documents and information, including an update on her settlement negotiations with Kroger. North

Cypress also threatened to sue both Norvil and her attorney for conversion if she did not honor the lien.

Norvil filed a petition for declaratory judgment pursuant to the Uniform Declaratory Judgments Act (UDJA) on January 31, 2018, seeking determination of the parties' rights, status, and other legal relationship arising under Chapter 55 of the Property Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011. Specifically, Norvil argued that Texas Property Code Section 55.004(d)(1) limits the amount of a hospital lien to the "reasonable and regular rate for the services," and she asked the court to declare that North Cypress's charges exceeded a reasonable and regular rate for the medical services provided and were not recoverable under Chapter 55. *See* TEX. PROP. CODE § 55.004(d)(1). Norvil also requested a determination "as to what reasonable charges should have been for such services at the time and place that they were rendered."

North Cypress answered and asserted affirmatives defenses of quasi-estoppel and estoppel by contract. North Cypress also asserted counterclaims against Norvil for breach of contract, quantum meruit, unjust enrichment, suit on a sworn account, conversion, and money had and received.

North Cypress filed a timely motion to dismiss under the TCPA alleging that the TCPA applies because Norvil's declaratory judgment action is based on North Cypress's filing of the hospital lien, and, therefore, Norvil's declaratory judgment

action relates to North Cypress's right of free speech and right to petition. Norvil filed a response to the motion in which she argued, among other things, that: (1) the TCPA was inapplicable based on the statute's commercial speech exemption; (2) the trial court was nevertheless required to deny the motion to dismiss because she brought forth clear and specific evidence establishing a prima facie case for each element of her claim; and (3) North Cypress failed to meet its burden with respect to its affirmative defenses.[1]

The trial court denied North Cypress's motion to dismiss without specifying the basis for its decision.

## Texas Citizens Participation Act

In its sole issue on appeal, North Cypress argues that the trial court erred by denying its motion to dismiss under the TCPA because: (1) North Cypress met its initial burden to prove that Norvil's claim was "based on, relates to, or [was] in response to" North Cypress's exercise of its right to free speech and right to petition; (2) Norvil did not prove that the commercial speech exemption applies; (3) Norvil did not meet her burden to bring forth clear and specific evidence establishing a prima facie case for each element of her claim; and (4) even if she did, North Cypress

---

[1] Norvil also filed an amended petition that removes most references to the "lien" but requests the same relief as her original petition.

established each element of its affirmative defenses of quasi-estoppel and estoppel by contract. *See* TEX. CIV. PRAC. & REM. CODE § 27.005.

## A. Applicable Law and Standard of Review

Chapter 27 of the Texas Civil Practice & Remedies Code, also known as the Texas Citizens Participation Act, is an anti-SLAPP statute. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The purpose of the TCPA, as stated by the Legislature, "is to 'encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.'" *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (quoting TEX. CIV. PRAC. & REM. CODE § 27.002).

The TCPA's primary vehicle for accomplishing its stated purpose is a motion-to-dismiss procedure that allows defendants to claim that a plaintiff has filed a suit that interferes with the defendant's proper exercise of a constitutionally protected right and gives the defendant the right to seek dismissal of the underlying action, attorney's fees, and sanctions at an early stage in the litigation. *See generally* TEX. CIV. PRAC. & REM. CODE § 27.003(a); *see also Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

A defendant can invoke the TCPA's protections by filing a motion to dismiss and must show first, by a preponderance of the evidence, that the plaintiff's claim is "based on, relates to, or is in response to" the defendant's exercise of "the right of free speech, right to petition, or right of association." *In re Lipsky*, 460 S.W.3d 579, 586–87 (Tex. 2015) (quoting TEX. CIV. PRAC. & REM. CODE § 27.005(b)). If the defendant makes the initial showing, the burden shifts to the plaintiff to "'establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 27.005(c)). If the defendant's constitutional rights are implicated and the plaintiff has not met the required showing of a prima facie case, the trial court must dismiss the plaintiff's claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b) & (c). Even if the plaintiff meets its burden, the defendant may still obtain a dismissal if it establishes each essential element of a valid defense to the plaintiff's claim. *See id.* § 27.005(d). A plaintiff can avoid the act's burden-shifting requirements, however, by showing that one of the TCPA's exemptions applies. *See id.* § 27.010. If an exemption applies, the trial court has no choice but to deny the motion.

We review de novo a trial court's ruling on a motion to dismiss under the TCPA. *See Holcomb v. Waller Cty.*, 546 S.W.3d 833, 839 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). In conducting our review, "[w]e review the pleadings and evidence in a light favorable to" the nonmovant. *Newspaper Holdings, Inc. v. Crazy*

*Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80–81, 83 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding pleadings and evidence to be reviewed in light favorable to plaintiff and considering "record as a whole" and evidence submitted by both sides).

Because Norvil does not dispute that North Cypress met its initial burden of proving that her legal action implicates North Cypress's rights under the TCPA, we will assume without deciding that the TCPA applies to Norvil's declaratory judgment action for purposes of our resolution of this interlocutory appeal, and begin by addressing whether Norvil met her burden to prove that North Cypress's hospital lien constitutes "commercial speech" exempted from the TCPA's protection. *See* TEX. CIV. PRAC. & REM. CODE § 27.010(b).

## B.    Commercial Speech Exemption

North Cypress argues that the trial court erred by denying its motion to dismiss based on section 27.010(b), which is commonly referred to as the commercial speech exemption. Specifically, North Cypress argues that the commercial speech exemption does not apply in this case because Norvil did not carry her burden of establishing that North Cypress: (1) is primarily engaged in the business of selling or leasing goods or services; (2) the intended audience of North Cypress's hospital lien was an actual or potential buyer or customer; and (3) North Cypress's hospital

lien was filed for the purpose of securing sales in the goods or services of the person making the statement.

> The commercial speech exemption states that the TCPA does not apply:

> to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

*Id.* This "exemption applies only to certain communications related to a good, product, or service in the marketplace—communications made not as a protected exercise of free speech by an individual, but as commercial speech which does no more than propose a commercial transaction." *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 690 (Tex. 2018) (per curiam) (citation and emphasis omitted); *see also Whisenhunt v. Lippincott*, 474 S.W.3d 30, 42 (Tex. App.—Texarkana 2015, no pet.) (stating that for exemption to apply, "the statement must be made for the purpose of securing sales in the goods or services of the person making the statement").

Norvil bears the initial burden of demonstrating that the commercial speech exemption applies and that the motion to dismiss should be denied. *See Newspaper Holdings, Inc.*, 416 S.W.3d at 88.

The Tyler Court of Appeals has recently held that the TCPA's commercial speech exemption applies to hospital liens under similar circumstances, and we

consider the court's analysis on this aspect of the TCPA to be persuasive. *See Tyler v. Pridgeon*, 570 S.W.3d 392, 398–99 (Tex. App.—Tyler 2019, no pet.); *see also Berry v. ETX Successor Tyler, f/k/a E. Tex. Med. Ctr.*, No. 12-18-00095-CV, 2019 WL 968528, at *3–4 (Tex. App.—Tyler Feb. 28, 2019, no pet. h.) (mem. op.).

North Cypress argues that the commercial speech exemption does not apply in this case because Norvil did not carry her burden of establishing that North Cypress is primarily engaged in the business of selling or leasing goods or services. Like the hospitals in *Pridgeon* and *Berry*, North Cypress argues that it is primarily in the business of treating sick and injured people and the selling of goods and services is ancillary to its primary purpose. *See Pridgeon*, 570 S.W.3d at 398; *Berry*, 2019 WL 968528, at *3. As our sister court has noted, however, "[t]he business of selling or leasing goods or services and the business of treating sick and injured people are not mutually exclusive activities." *Pridgeon*, 570 S.W.3d at 398; *Berry*, 2019 WL 968528, at *4. In this case, North Cypress filed the hospital lien to recover fees for services rendered. In filing the lien, the hospital was acting in its capacity as a seller of healthcare services provided to Norvil. In addition to filing the lien, the hospital also sent at least three letters to Norvil demanding payment of the full amount of the bill, it threatened to sue Norvil and her attorney if the lien was not honored, and it filed numerous counterclaims against Norvil for breach of contract, quantum meruit, unjust enrichment, suit on a sworn account, conversion, and money

had and received. North Cypress also contacted Kroger's counsel in January 2017 in an apparent attempt to collect the full amount of the lien. Thus, the record reflects that North Cypress is trying to get paid for the healthcare services it provided to Norvil and has made several attempts to collect on this debt. *Accord Pridgeon*, 570 S.W.3d at 398; *Berry*, 2019 WL 968528, at *3–4. *Cf. Newspaper Holdings, Inc.*, 416 S.W.3d at 80–81, 83 (holding court must review pleadings and evidence in light favorable to plaintiff and considering "record as a whole" and evidence submitted by both sides). Based on the record before us, we conclude that, when it filed its lien, North Cypress was primarily engaged in the business of selling goods or services for the treatment of sick and injured people. *Accord Pridgeon*, 570 S.W.3d at 398; *Berry*, 2019 WL 968528, at *4.

North Cypress also argues that the commercial speech exemption does not apply because Norvil did not carry her burden of establishing that "the intended audience of [the hospital lien] is an actual or potential buyer or customer." The Property Code states that the hospital lien attaches to Norvil's personal injury lawsuit against Kroger, the judgment arising out of that lawsuit, or the proceeds of a settlement of her cause of action. *See* TEX. PROP. CODE § 55.003(a). A lien against the patient's tort recovery is a claim against the patient. *Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007). Because "a hospital has neither tort nor contract rights against a tortfeasor who has injured a

patient, the only support for a hospital lien is its claim for reimbursement from the patient." *Id.* Thus, "a lien against a patient's tort recovery is just as much a claim against the patient as if it were filed against the patient's house, car, or bank account." *Id.* We further note that North Cypress's counterclaims against Norvil are also based in part on the lien. Therefore, we conclude that Norvil is a member of the hospital lien's intended audience. *Accord Pridgeon*, 570 S.W.3d at 398; *Berry*, 2019 WL 968528, at *4.

North Cypress also disputes that the hospital lien was filed "for the purpose of securing sales in the goods or services of the person making the statement." As previously discussed, North Cypress was primarily engaged in the business of providing healthcare services for which it expected to be paid, and it filed the lien in its capacity as seller of goods and services related to healthcare. The lien arose out of a commercial transaction involving North Cypress's provision of healthcare services to Norvil, who was a member of the intended audience of the lien. *See Castleman*, 546 S.W.3d at 690 (stating exemption applies to "commercial speech which does no more than propose a commercial transaction"); *cf. Pridgeon*, 570 S.W.3d at 398.

We conclude that the commercial speech exemption applies to Norvil's declaratory judgment action. Therefore, the trial court did not err by denying North

Cypress's motion to dismiss pursuant to the TCPA. We overrule North Cypress's sole issue.[2]

## Conclusion

We affirm the trial court's order denying North Cypress's motion to dismiss pursuant to the TCPA.


        Russell Lloyd
        Justice


Panel consists of Justices Lloyd, Landau, and Countiss.

---

[2]     Having determined that the commercial speech exemption applies, we do not need to consider whether Norvil and North Cypress met their respective burdens with respect to the elements of Norvil's claim or North Cypress's affirmative defenses to her claim.